# United States Court of Appeals
## For the First Circuit

No. 25-2077

IN RE: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as Representative for the Commonwealth of Puerto Rico; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as Representative for the Employees Retirement System of the Government of the Commonwealth of Puerto Rico; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as Representative for the Puerto Rico Highways and Transportation Authority; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as Representative for the Puerto Rico Electric Power Authority (PREPA); THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as Representative of the Puerto Rico Public Buildings Authority,

Debtors,

LUMA ENERGY, LLC; LUMA ENERGY SERVCO, LLC,

Movants, Appellants,

v.

PUERTO RICO DEPARTMENT OF CONSUMER AFFAIRS (DACO); INSTITUTO DE COMPETITIVIDAD Y SOSTENIBILIDAD ECONÓMICA (ICSE),

Respondents, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Laura Taylor Swain,* U.S. District Judge]

---

* Of the Southern District of New York, sitting by designation.

Before

Dunlap, Lynch, and Kayatta,
<u>Circuit Judges</u>.

--------

David Horniak, with whom <u>Brett Ingerman</u>, <u>Dale K. Cathell</u>, <u>DLA Piper LLP</u>, <u>Mariana Muñiz Lara</u>, and <u>DLA Piper (Puerto Rico) LLC</u> were on brief, for appellants.

Peter Friedman, with whom <u>Omar Andino Figueroa</u>, <u>Frank A. Rosado Méndez</u>, <u>Office of the Solicitor General of Puerto Rico</u>, <u>Matthew M. Higgins</u>, <u>Maria J. DiConza</u>, <u>Gabriel Olivera</u>, <u>Jason Zarrow</u>, and <u>O'Melveny & Myers LLP</u> were on brief, for appellee Puerto Rico Department of Consumer Affairs (DACO).

Fernando E. Agrait Betancourt, with whom <u>José Leonardo Pou Román</u> and <u>Fernando E. Agrait Law Office</u> were on brief, for appellee Instituto de Competitividad y Sostenibilidad Económica (ICSE).

Martin J. Bienenstock, <u>John E. Roberts</u>, <u>Paul V. Possinger</u>, <u>Margaret A. Dale</u>, and <u>Proskauer Rose LLP</u> on brief for Financial Oversight and Management Board for Puerto Rico as nonparty.

--------

August 13, 2026

--------

**KAYATTA**, **Circuit Judge**. LUMA Energy, LLC, and LUMA Energy ServCo, LLC, (collectively, "LUMA") agreed to take over operation and maintenance of Puerto Rico's electric power transmission and distribution system from Title III debtor the Puerto Rico Electric Power Authority (PREPA). When Puerto Rico's consumer protection agency sued LUMA and PREPA in a Puerto Rico court challenging an important term of that agreement, LUMA -- but not PREPA -- sought an order from the Title III court staying that action. After the Title III court denied LUMA's request, LUMA appealed. For the following reasons, we find that LUMA has no statutory standing to pursue this appeal.

**I.**

**A.**

We have elsewhere chronicled the fiscal emergency in the Commonwealth of Puerto Rico (the "Commonwealth") and Congress's 2016 enactment of PROMESA (short for the Puerto Rico Oversight, Management, and Economic Stability Act, 48 U.S.C. §§ 2101-2241) to address that emergency. See, e.g., Pierluisi v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 37 F.4th 746, 750 n.1 (1st Cir. 2022) (collecting cases). For present purposes, suffice it to say that PROMESA created a "modified version of the municipal bankruptcy code" and authorized the Financial Oversight and Management Board (the "Board") to place the Commonwealth and its instrumentalities into bankruptcy

proceedings known as Title III proceedings.[1]  Fin. Oversight & Mgmt. Bd. for P.R. v. Federacion de Maestros de P.R., Inc. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 32 F.4th 67, 75 (1st Cir. 2022); see 48 U.S.C. §§ 2121(a), (b)(1), (c)(1), 2161–2178.  In such proceedings the Board "is the representative of the debtor." 48 U.S.C. § 2175(b).

PREPA is a public corporation and instrumentality of the Commonwealth that was created by statute in 1941 to provide electric power to Puerto Rico.  See P.R. Laws Ann. tit. 22, § 193(a) (2025); Union de Trabajadores de la Industria Eléctrica y Riego v. Fin. Oversight & Mgmt. Bd. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 7 F.4th 31, 34 (1st Cir. 2021).  To that end, PREPA owns and has operated an extensive electric power transmission and distribution system (the "T&D System").

In an effort to restructure PREPA's daunting debt, the Board initiated Title III proceedings on behalf of the company in 2017.  Those proceedings triggered an automatic stay of many claims against PREPA, including "any act to obtain possession of" or "exercise control over property of the estate."  11 U.S.C.

---

[1]  "Title III" refers to the subchapter of PROMESA that authorizes and details these bankruptcy proceedings. See 48 U.S.C. §§ 2161–2178.  When overseeing Title III cases, the district court is commonly referred to as the "Title III court."  See, e.g., Fin. Oversight & Mgmt. Bd. for P.R. v. Ad Hoc Grp. of PREPA Bondholders (In re Fin. Oversight & Mgmt. Bd. for P.R.), 899 F.3d 13, 18 (1st Cir. 2018).

§ 362(a)(3); 48 U.S.C. § 2161(a) (incorporating 11 U.S.C. § 362 into PROMESA); see Union de Trabajadores, 7 F.4th at 35.

**B.**

In 2018, while PREPA's restructuring case was underway in the Title III court, the Legislative Assembly of Puerto Rico passed the Puerto Rico Electric Power System Transformation Act. See P.R. Laws Ann. tit. 22, §§ 1111–1125 (2025); Union de Trabajadores, 7 F.4th at 35. That Act authorized the partial privatization of PREPA and facilitated a competitive bidding process to select a private partner who would assume operation and maintenance of the T&D system. See Union de Trabajadores, 7 F.4th at 35. The Puerto Rico Public-Private Partnerships Authority (P3A), another public corporation of the Commonwealth, oversaw the bidding process. LUMA, a private corporation, was ultimately selected as the winning bidder. See id.

In June 2020, P3A, PREPA, and LUMA entered into a long-term contract, the Operation and Maintenance Agreement (OMA), in which LUMA agreed to take over operation and maintenance of the T&D System, with PREPA retaining ownership of that system. The OMA also called for the parties to apply to the Puerto Rico Energy Bureau (PREB), an independent regulator of Puerto Rico's public energy policy, for a waiver of LUMA's liability to consumers in connection with its management of the T&D system:

- 5 -

>> Liability Waiver. In connection with the submission of the Initial Budgets to PREB, the Parties agree to apply for inclusion in the Rate Order that the . . . terms of service include: (i) a waiver of [PREPA]'s, [LUMA Energy]'s and [LUMA Energy ServCo]'s[2] liability to customers or any Person receiving Power and Electricity for any Losses arising in any way out of or in connection with the operation of the T&D System and the provision of Power and Electricity including any events of interrupted, irregular or defective electric service due to Force Majeure Events, other causes beyond [PREPA]'s, [LUMA Energy]'s or [LUMA Energy ServCo]'s control or ordinary negligence, gross negligence or willful misconduct of [PREPA], [LUMA Energy] or [LUMA Energy ServCo], or their respective employees, agents or contractors; and (ii) a waiver in all cases of responsibility for any loss of profits or revenues, special, exemplary, punitive, indirect, incidental or consequential damages, including loss of revenue, loss of use of equipment, cost of capital, cost of temporary equipment, overtime, business interruption, spoilage of goods, claims of customers of electric customers or other economic harms, in each case howsoever and whensoever arising, including where caused by any of [PREPA]'s, [LUMA Energy]'s or [LUMA Energy ServCo]'s ordinary negligence, gross negligence or willful misconduct (collectively the "Liability Waiver").

Under the OMA, PREB's approval of a liability waiver "generally consistent" with this provision and that waiver being "in full force and effect" are conditions precedent to LUMA's obligation to

---

[2] Throughout the OMA, PREPA is referred to as "Owner," LUMA Energy is referred to as "ManagementCo," and LUMA Energy ServCo is referred to as "ServCo." For clarity, when quoting from the OMA we replace these terms with the names of the entities to which they refer.

commence providing services under the OMA.[3]  The OMA also requires PREPA to indemnify LUMA against certain claims by customers and non-parties to the OMA in connection with the T&D system.[4]

On May 31, 2021, PREB issued a Resolution and Order approving the liability waiver, with some modifications.[5]  LUMA has since operated the T&D System under an extended supplemental agreement, the details of which do not bear on the jurisdictional issue addressed in this opinion.

## C.

After LUMA invoked the liability waiver to deny over 1,800 consumer claims, the Puerto Rico Department of Consumer Affairs (DACO) filed suit in a Commonwealth court on July 22, 2025, naming as defendants LUMA, PREPA, and PREB (the "DACO action").  DACO sought a declaration that the OMA's liability waiver and PREB's Resolution and Order largely approving that waiver were unconstitutional under the Puerto Rico Constitution.  After

---

[3]  PREPA's exit from Title III proceedings under terms "reasonably acceptable" to LUMA is also a condition precedent to the OMA's service commencement date.

[4]  The parties disagree about the scope of these indemnification agreements.  But we need not resolve this dispute, as it has no bearing on the jurisdictional question before us.

[5]  PREB rejected the proposed waiver's inclusion of gross negligence and willful misconduct but approved a waiver of LUMA's liability for ordinary negligence.  And even where LUMA can face liability -- i.e., in cases of gross negligence or willful misconduct -- the waiver curtails the damages consumers can recover to "direct damages" only.

originally filing in the Commonwealth Court of First Instance, DACO requested that the Supreme Court of Puerto Rico hear and decide the case through intrajurisdictional certification. See P.R. Laws Ann. tit. 4, § 24s(f) (2025) (permitting the Supreme Court of Puerto Rico to, through certification, "immediately . . . consider and . . . resolve[] any matter pending in the Court of First Instance" if "there is a question of imperative public importance that includes any substantial constitutional matter under the Constitution of Puerto Rico").  The Supreme Court of Puerto Rico granted DACO's request on August 22, 2025, and took up the case.

## II.

### A.

With that background in place, we turn to the court order that gives rise to this appeal.  On September 18, 2025, in an effort to pause the Supreme Court of Puerto Rico's consideration of the DACO action, LUMA -- but not its codefendants PREPA or PREB -- filed a motion in the Title III court to enforce PROMESA's automatic stay.  LUMA sought an order finding that the DACO action violated the stay and directing DACO to withdraw its complaint. The Board, PREPA's representative in Title III proceedings, did not make an appearance or file any pleadings in that matter, nor otherwise seek to invoke the stay on PREPA's behalf.  The Board did, however, "permit[] LUMA to report" to the Title III court

- 8 -

that the Board believed the automatic stay applied to the DACO action.[6]

The Title III court was not convinced.  The court held that, even assuming the DACO action qualified as an act to "exercise control over" the OMA as property of PREPA, see 11 U.S.C. § 362(a)(3), it was nevertheless exempted from the stay by the police power exception.  In re Fin. Oversight & Mgmt. Bd. for P.R., 808 F. Supp. 3d 267, 273-74, 274 n.6 (D.P.R. 2025).  That exception excludes from the automatic stay's reach "the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power."  11 U.S.C. § 362(b)(4).  The Title III court concluded that the DACO action fell within this exception as a suit by Puerto Rico's consumer protection agency to enforce its power to protect consumers through litigation.  In re Fin.

---

[6] At this court's request, the Board submitted a brief detailing its position on the automatic stay's applicability to the DACO action.  In that brief, the Board agrees with LUMA, asserting that the DACO action violates the automatic stay "for the reasons identified in LUMA's" briefing.  The Board also argues that the outcome of this case could affect PREPA's restructuring. But those arguments are of no moment here, where the Board did not seek to enforce the stay on PREPA's behalf below nor seek to appeal the Title III court's order, and where we conclude that the party that is invoking our appellate jurisdiction, LUMA, lacks standing to do so.  See Microsystems Software, Inc. v. Scandinavia Online AB, 226 F.3d 35, 39 (1st Cir. 2000) ("[I]f the putative appellants lack standing to appeal, the only role for the appellate court is to memorialize that fact and simultaneously terminate the proceeding.").

- 9 -

Oversight & Mgmt. Bd., 808 F. Supp. 3d at 274-75.  Accordingly, on October 27, 2025, the Title III court issued a Memorandum Order denying LUMA's motion to enforce the automatic stay, thereby leaving the DACO action free to proceed in the Commonwealth courts. Id. at 279.  LUMA timely appealed the Title III court's order.

**B.**

On December 1, 2025, before any briefing to this court was due, the Supreme Court of Puerto Rico, in a unanimous opinion, held the liability waiver unconstitutional under the Puerto Rico Constitution.  See generally Departamento de Asuntos del Consumidor v. Luma Energy, LLC, 2025 TSPR 126, 2025 WL 3533919 (P.R. Dec. 1, 2025).[7]  The court reasoned that "the authority to grant immunity to a private entity is a public policy decision that can be made only by the Legislative Assembly," id. at *29, and found that the Legislative Assembly had not delegated that power to PREB, id. at *1 (referring to PREB by its Spanish-language abbreviation, NEPR).  The court concluded that PREB's conduct in approving the liability waiver therefore ran afoul of the separation of powers, id., rendering the waiver unconstitutional, id. at *28.

---

[7]  The court rendered its decision in Spanish.  We rely on the English translation provided to us by the parties, while citing to the corresponding portions of the publicly available Spanish-language version.

- 10 -

That decision did not moot this appeal. Should LUMA prevail before this court, the Puerto Rico Supreme Court's decision in the DACO action would be void unless the Title III court on remand were to "lift the automatic stay retroactively and thereby validate actions which otherwise would be void." Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 976 (1st Cir. 1997) (adopting the majority rule that actions taken in violation of an automatic bankruptcy stay are subject to being deemed void, while also affirming the availability of retroactive relief from the stay under 11 U.S.C. § 362(d)).

## III.

On appeal, LUMA asserts that the Title III court erred in finding that the police power exception applies to the DACO action and thus declining to enforce the automatic stay. In response, DACO and its co-appellee ICSE[8] defend the Title III court's decision on the merits. DACO also argues that, as a threshold matter, LUMA lacks standing to appeal the Title III

---

[8] ICSE, the Instituto de Competitividad y Sostenibilidad Económica, intervened as amicus curiae in the DACO action in support of DACO. When LUMA sought a stay of the DACO action in the Title III court, ICSE -- which had appeared in prior Title III proceedings related to PREPA -- filed a response brief and a surreply, and the Title III court considered ICSE's arguments in its order denying LUMA's requested stay. In re Fin. Oversight & Mgmt. Bd., 808 F. Supp. 3d at 270 n.3, 272-73. As a result, ICSE is a named respondent and appellee in this appeal of the Title III court's order.

- 11 -

court's order.[9]  We begin and end with the question of LUMA's standing to appeal.

**A.**

As the party invoking our appellate jurisdiction, LUMA bears the burden of proving it has standing to do so.  Neira Rivera v. Scotiabank de P.R. (In re Neira Rivera), 14 F.4th 60, 67 (1st Cir. 2021).  To carry that burden on appeal from a final order of a bankruptcy court, an appellant must establish that it is a "person aggrieved" by the court's order.  Id. at 66; see In re El San Juan Hotel, 809 F.2d 151, 154 (1st Cir. 1987) (noting the "person aggrieved" standard is a "prerequisite for appellate review" in proceedings under the Bankruptcy Code).  This is a "more stringent" standard than that required for Article III standing. Neira Rivera, 14 F.4th at 66.

In theory, it might be possible that a different appellate standing requirement applies in Title III proceedings than in those under the Bankruptcy Code, since "while PROMESA incorporates many provisions of that Code, it also has many

---

[9]  ICSE contends that LUMA lacked standing to enforce the stay in the first place.  It is unclear whether ICSE, like DACO, also contends that LUMA lacks standing to appeal the Title III court's order.  In any event, because we conclude that this case is not properly before us due to LUMA's lack of standing to appeal, we do not pass on ICSE's argument regarding LUMA's standing to enforce the stay below.  See Microsystems Software, 226 F.3d at 39; cf. United States v. Otero, 155 F.4th 78, 86 n.12 (1st Cir. 2025) ("When it is not necessary to decide more, it is necessary not to decide more." (citation modified)).

differences." Zorrilla v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 178 F.4th 747, 757 (1st Cir. 2026). But LUMA itself argues (with DACO's approval) that we should apply the narrow "person aggrieved" standard. LUMA has thus waived any argument that appellate standing is more forgiving under PROMESA than under the Bankruptcy Code.[10]

To qualify as a "person aggrieved," LUMA must show that the order declining to stay the DACO action "'directly and adversely' affects [LUMA's] pecuniary interests." Neira Rivera, 14 F.4th at 66 (quoting Spenlinhauer v. O'Donnell, 261 F.3d 113, 117 (1st Cir. 2001)). This standard is stringent by design: "The nature of bankruptcy litigation, with its myriad of parties, directly and indirectly involved or affected by each order and decision of the bankruptcy court, mandates that the right of appellate review be limited to those persons whose interests are directly affected." San Juan Hotel, 809 F.2d at 154.

**B.**

LUMA does not purport to represent PREPA's interests, conceding that the Board is PREPA's "sole Title III representative under PROMESA." LUMA instead roots its standing argument in its asserted status as a post-petition creditor of PREPA under the

---

[10] Nor is there any independent reason for us to look beyond this plain waiver given that the standard LUMA invokes does not call for the assertion of jurisdiction broader than that which would otherwise apply.

OMA's indemnification scheme.[11] As creditor, LUMA argues it will be directly and adversely affected by the failure to stay the DACO action because without the liability waiver, it will be left to seek indemnification for consumer claims from PREPA -- an entity with limited resources by virtue of its status as a Title III debtor.

As a threshold matter, there is a fair amount of case law suggesting the protection of the automatic stay in the first instance is solely for the benefit of the debtor's estate. See Lee v. McCardle (In re Peeples), 880 F.3d 1207, 1213–16 (10th Cir. 2018) ("[T]he automatic stay is for the sole benefit of the debtors' estate and it could subvert the bankruptcy trustee's powers to allow a creditor to appeal if the trustee chooses not to."[12] (citation modified)). And while creditors do have standing to appeal some types of bankruptcy court orders,[13] we have referred,

---

[11] LUMA also based its standing argument below on its asserted creditor status.

[12] The Board is the equivalent of a bankruptcy trustee in cases brought under Title III of PROMESA. 48 U.S.C. § 2161(c)(7) (establishing that, with one exception not relevant here, "[t]he term 'trustee' . . . means the Oversight Board").

[13] For instance, a creditor may appeal a bankruptcy court's confirmation order when that order's treatment of the creditor's claim inflicts direct, adverse, pecuniary injury, see Asociación de Empleados del Estado Libre Asociado de P.R. v. Nieves (In re Nieves), 647 B.R. 809, 820, 823 (B.A.P. 1st Cir. 2023) (entertaining creditor's appeal of confirmation order that allegedly affected its rights and statutory lien against the debtor), or a summary judgment order that finds a creditor's security interest unperfected, see Yamaha Motor Corp., USA v. Perry

- 14 -

albeit in dictum, to a creditor's assertion of standing "to challenge an alleged violation of the automatic stay" as "problematic." FDIC v. Shearson-American Express, Inc., 996 F.2d 493, 497 (1st Cir. 1993). At the same time, there are other cases that recognize that one of the purposes of the stay is to protect creditors. See Spookyworld, Inc. v. Town of Berlin (In re Spookyworld, Inc.), 346 F.3d 1, 10 (1st Cir. 2003).

We need not resolve this tension here because -- as LUMA itself acknowledges -- even in these latter cases, creditors can find haven in the stay only to the extent they are threatened with the type of harm the stay was designed to prevent.[14] See Peeples, 880 F.3d at 1214 (holding that, although a creditor "arguably" met

_____

Hollow Mgmt. Co. (In re Perry Hollow Mgmt. Co.), 297 F.3d 34, 36–37, 39 (1st Cir. 2002).

[14] Some cases that address the way in which the stay protects creditors -- including St. Paul Fire & Marine Insurance Co. v. Labuzan, 579 F.3d 533 (5th Cir. 2009), upon which LUMA relies -- discuss creditors' standing to initiate a cause of action under a subsection of the automatic stay not at issue here. That subsection, 11 U.S.C. § 362(k), allows "an individual injured by any willful violation of a stay" to recover damages. See St. Paul Fire, 579 F.3d at 539, 543. As the Tenth Circuit has recognized, the use of "an individual" in that damages-authorizing subsection suggests that it "is meant for some party or parties other than the bankruptcy trustee" and thus has a "broader reach" than the provision at issue here. Peeples, 880 F.3d at 1215-16; see id. at 1213-16 (distinguishing the analysis under § 362(a), the provision LUMA seeks to enforce, from that under § 362(k), the damages-authorizing subsection). Cases construing § 362(k) are thus largely inapposite here, where the question is LUMA's standing to appeal the district court's determination under § 362(a), except insofar as those cases shed light on the type of creditor harm with which the stay is concerned.

the general standard to appeal a bankruptcy court order, he could not do so because "he hasn't alleged that he's been harmed in his capacity as a creditor"); Magnoni v. Globe Inv. & Loan Co. (In re Globe Inv. & Loan Co.), 867 F.2d 556, 559-60 (9th Cir. 1989) (holding appellants lacked standing to invoke the automatic stay because, although creditors, they were not proceeding as such, and instead the "true nature of their claim . . . shows them to be aggrieved property owners").

Case law from across circuits recognizes that, insofar as the automatic stay seeks to benefit creditors, it does so by protecting them from inequitable treatment as compared to other creditors. See Spookyworld, 346 F.3d at 10 (noting the automatic stay's "purpose is to prevent some private creditors from gaining priority on other creditors"); St. Paul Fire & Marine Ins. Co. v. Labuzan, 579 F.3d 533, 540 (5th Cir. 2009) ("The purpose of the automatic stay is to protect creditors in a manner consistent with the bankruptcy goal of equal treatment." (citation omitted)); Peeples, 880 F.3d at 1216 ("[T]he automatic stay's specific purposes are to protect the debtor from collection efforts and to protect creditors from inequitable treatment.").

LUMA fails to identify any way in which the Title III court's order places it on unequal footing with any other creditor of PREPA. The only injury LUMA links to its status as a creditor at all is that, without the liability waiver, it "will hold claims

against an estate in Title III proceedings with limited resources." But this harm is not one that places LUMA in an unequal position compared to any other creditor of PREPA. To the contrary, it places LUMA in the same position as PREPA's other creditors, each of whom, by definition, holds a claim against an estate in Title III proceedings with limited resources. See 11 U.S.C. § 101(10)(A) (defining "creditor" as an "entity that has a claim against the debtor");[15] 48 U.S.C. § 2161(a), (c) (incorporating the definitions in 11 U.S.C. § 101 into PROMESA except as otherwise provided therein and declining to vary the Bankruptcy Code's definition of "creditor").

LUMA argues both that its injury does not depend on future "failed indemnification" and that PREPA's status as a debtor renders its resources limited, thereby threatening its ability to fully indemnify LUMA. Insofar as LUMA seeks to claim the potential harm posed to PREPA by "cascading tort liability" as its own injury, it is the Board, not LUMA, that has the authority to claim that harm for purposes of standing. And insofar as LUMA identifies the harm posed to it by potential future failed indemnification as an injury relevant to its standing, the only rationale LUMA provides for the risk of failed indemnification is the fact that

---

[15] The Bankruptcy Code also recognizes entities holding certain kinds of "claim[s] against the estate" or "community claim[s]" as creditors. 11 U.S.C. § 101(10)(B)-(C).

PREPA is a Title III debtor.  As we have explained, the risk of harm inherent in holding a claim against a Title III debtor places LUMA on equal, not unequal, footing with PREPA's other creditors.

**C.**

LUMA nevertheless lays a litany of harms at the Title III court's feet and claims that those injuries satisfy the "person aggrieved" standard.  LUMA asserts that the court's order "impair[s] its rights" under the OMA by extinguishing the liability waiver; "diminishe[s] [its] property" by stripping away a material term of the OMA, namely, the liability waiver; and "increase[s] its burdens" by exposing LUMA to consumer tort litigation, again by virtue of the loss of the liability waiver.  See San Juan Hotel, 809 F.2d at 154 (noting an appellant qualifies as a "person aggrieved" when the appellant's "rights or interests are 'directly and adversely affected pecuniarily'" by an order that "diminishes his property, increases his burdens, or impairs his rights" (citation omitted)).  But none of the harms identified by LUMA flows "directly" from the Title III court's order.  See Neira Rivera, 14 F.4th at 66 (citation omitted).  Nor, for that matter, do they relate to LUMA's status as a creditor of PREPA.  See supra Section III.B.

The Title III court's decision did not invalidate the liability waiver; it simply permitted the Supreme Court of Puerto Rico to render a decision regarding the waiver's constitutionality

- 18 -

while PREPA's restructuring is still underway. Indeed, the Title III court's order left equally open the possibilities that the Supreme Court of Puerto Rico would uphold or invalidate LUMA's waiver of liability. Each injury LUMA identifies is thus the direct result of the Supreme Court of Puerto Rico's ultimate decision in the DACO action -- not the Title III court's order permitting that action to proceed sooner rather than later. While LUMA argues that, but for the Title III court's order, the DACO action could not (yet) have proceeded and LUMA therefore would have retained its liability waiver (at least for now), LUMA cites no support for the proposition that bankruptcy's "stringent" standing requirement that the appealed order "directly and adversely affect[]" the appellee's pecuniary interests is satisfied whenever but-for causation is established. See Neira Rivera, 14 F.4th at 66 (citation modified). Nor is such an interpretation consistent with the "limited" nature of appellate bankruptcy standing. See San Juan Hotel, 809 F.2d at 154; see also Bostock v. Clayton Cnty., 590 U.S. 644, 656 (2020) (observing that but-for causation "can be a sweeping standard").

The only injury that does directly flow from the Title III court's order concerns the timing of the DACO action, which implicates both LUMA's need to defend itself in that case and its receipt of the Supreme Court of Puerto Rico's ultimate decision before, rather than after, PREPA's restructuring is

complete.  LUMA does not attempt to argue that the burden of defending itself in the DACO action during PREPA's restructuring confers it with standing, preferring to hang its hopes on the burden posed by consumer lawsuits in the absence of the waiver. But that burden, like all the others identified by LUMA, neither flows directly from the Title III court's order nor exposes LUMA, as an asserted post-petition creditor, to the type of harm the stay was designed to prevent.

**D.**

We need not -- indeed, cannot -- go further.  LUMA's lack of standing to prosecute this appeal means "we have no jurisdiction to decide the merits of the case."  Sea Shore Corp. v. Sullivan, 158 F.3d 51, 54 (1st Cir. 1998).  Having determined LUMA's absence of standing and the according want of our own jurisdiction, all that remains is for us to terminate these proceedings.  See Microsystems Software, Inc. v. Scandinavia Online AB, 226 F.3d 35, 39 (1st Cir. 2000).

**IV.**

For the foregoing reasons, we conclude that this case is not properly before this court, and accordingly we dismiss LUMA's appeal for lack of appellate jurisdiction.